## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION (AKRON)

| | |
|---|---|
| **CARMEN ELECTRA,** | : **Case No.: 5:18-cv-2176** |
| **LUCY PINDER,** | : |
| **KHLOE TERAE, and** | : |
| **IRINA VORONINA** | : **Judge Sara Lioi** |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : **FIRST AMENDED COMPLAINT AND** |
| **F.M.J. RESTAURANT, INC. d/b/a** | : **JURY DEMAND** |
| **DIAMOND LODGE,** | : |
| **ROYAL RESTAURANT, INC. d/b/a** | : |
| **DIAMOND ROYALE and** | : |
| **RENATO6, LTD d/b/a DIAMOND CLUB** | : |
| | : |
| **Defendants.** | : |
| | : |

Plaintiffs, Carmen Electra, Lucy Pinder, Khloe Terae, and Irina Voronina by and through their attorneys, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., hereby submit their First Amended Complaint and Jury Demand against Defendants, F.M.J. Restaurant, Inc. d/b/a Diamond Lodge, Royal Restaurant, Inc. d/b/a Diamond Royale, and RENATO6, LTD. d/b/a Diamond Club and allege and aver as follows:

### INTRODUCTION

1.      This is an action for damages and other relief arising from the misappropriation, misuse, and alteration of Plaintiffs' images by Defendants in order to promote their gentlemen's clubs, Diamond Lodge, Diamond Royale, and Diamond Club (collectively "the Defendant Clubs").

2.      Defendants work together to advertise, market, and promote their respective clubs, collectively calling themselves "Thee Diamond Men's Clubs."

3. Defendants share a website (accessible via the URL: http://www.dmclubs.com/) that contains links to separate web pages for each respective club.

4. Defendants use their websites and online social media marketing platforms to market and advertise the Diamond Lodge, Diamond Royale, and Diamond Club as having "World Class Adult Entertainment" with "Stunning Entertainers".

5. As a means of illustrating these claims and in an effort to drive traffic and economic and commercial benefits to the Diamond Lodge, Diamond Royale, and Diamond Club, Defendants post pictures of women on their respective webpages and social media platforms, including on Facebook, Twitter, and Instagram.

6. Defendants have developed and instituted a policy of misappropriation, alteration, and publication of images (including Plaintiffs') on their webpages and social media platforms that they have not paid for, and to which they have no legal right, in order to promote their clubs.

7. The interconnected advertising, promotions, and marketing of Defendants' clubs is clearly demonstrated by the fact that many of Plaintiffs' images were used by two or more Defendants with the same or similar background images or text. For example, images of Lucy Pinder, a famous model and actor, were posted repeatedly by all three Defendants to promote their "Diamonds Military ID Night." Similarly, an image of Carmen Electra, a world famous model, actress, television personality, and businesswoman, was used by both Diamond Royale and Diamond Lodge on the same day with the same messaging. Likewise, on repeated occasions, Diamond Royale and Diamond Lodge posted the same images of Irina Voronina, a famous model and actor, to promote the same events and promotions – military night and food deals.

8. Such uses of Plaintiffs' images implicate Defendants as participating in a concerted scheme of misappropriating Plaintiffs' images and publishing them, without consent or

remuneration, on Defendants' social media accounts in order to promote their clubs and the Diamond brand.

9. Defendants' repeated uses of Plaintiffs' images connect Plaintiffs to and associate them with the Defendant Clubs and their respective events and activities, despite the fact that Plaintiffs have never worked at, or affiliated themselves with Defendants or the Defendant Clubs. Furthermore, Plaintiffs have never contracted with or sold their images to Defendants or the Defendant Clubs. Moreover, Plaintiffs have never appeared at the Defendant Clubs and have never endorsed the Defendant Clubs or their respective events and activities.

10. Despite this, upon information and belief, Defendants' use of Plaintiffs' images drove customers, business, and revenue to the Defendant Clubs.

11. Defendants did not have Plaintiffs' permission to use their images or likenesses and never asked them for permission to use their images or likenesses.

12. Defendants have not compensated Plaintiffs for the use of their images or likenesses for commercial or any other purpose.

13. Defendants knew that their use of Plaintiffs' images and likenesses was unauthorized, and knew that their use of Plaintiffs' images would cause consumer confusion as to Plaintiffs' sponsorship, approval of, affiliation with, association with, and/or employment at Defendants' Clubs.

14. Defendants' unauthorized use of Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law right of privacy through appropriation of their images, as well as the Ohio Deceptive Trade Practices Act (O.R.C. § 4165.02(A)(2) and (3)), the Lanham Act (15 U.S.C. § 1125(a)), and unjustly enriched Defendants.

15. Plaintiffs seek compensatory damages, disgorgement of Defendants' profits realized through their unlawful use of Plaintiffs' images, likenesses, and identities, treble damages, punitive damages, attorney's fees, injunctive relief, and other such relief as would be fair and just to remedy Defendants' unlawful acts, and to ensure that no such violations occur in the future.

## PARTIES

16. Plaintiff Carmen Electra is a well-known model, actor, and businesswoman, and is a resident and citizen of Los Angeles County, California.

17. Plaintiff Lucy Pinder is a well-known model, actor, and businesswoman residing in the United Kingdom.

18. Plaintiff Khloe Terae is a well-known model, actor, and businesswoman and is a resident and citizen of Los Angeles County, California.

19. Plaintiff Irina Voronina is a well-known model, actor, and businesswoman and is a resident and citizen of Los Angeles County, California.

20. Defendant F.M.J. Restaurant Inc. d/b/a Diamond Lodge is an Ohio corporation, with its principal place of business in Portage County, Ohio, located at 3116 SR 14, Rootstown, Ohio 44272. F.M.J. Restaurant Inc. can be served through its statutory agent Richard E. Herthneck, 20220 Center Ridge Road, Suite 304, Rocky River, Ohio 44116.

21. Defendant Royal Restaurant, Inc. d/b/a Diamond Royale is an Ohio Corporation with its principal place of business in Stark County, Ohio, located at 4675 Munson St. NW, Canton, Ohio 44718. Royal Restaurant, Inc. can be served through its statutory agent Richard E. Herthneck, 20220 Center Ridge Road, Suite 304, Rocky River, Ohio 44116.

22. Defendant RENATO6, LTD. d/b/a Diamond Club is an Ohio Corporation with its principal place of business in Cuyahoga County, Ohio, located at 1628 Fall St., Cleveland, Ohio

4

44113. RENATO6, LTD. can be served through its statutory agent Richard E. Herthneck, 20220 Center Ridge Road, Suite 304, Rocky River, Ohio 44116.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy for each Plaintiff against each Defendant, excluding interest and costs, exceeds $75,000.

24.     This Court has subject-matter jurisdiction over Plaintiffs' claims that arise under 15 U.S.C. § 1125(a)(1) (The Lanham Act) based upon 28 U.S.C. § 1331.

25.     Because this Court has original jurisdiction over Plaintiffs' Lanham Act claims, the Court also has supplemental jurisdiction over Plaintiffs' state law claims based on 28 U.S.C. § 1367, as they are so related to Plaintiffs' Lanham Act claims that they form part of the same case or controversy.

26.     The Court has personal jurisdiction over Defendants by virtue of their presence, residence, incorporation, operation, and regular and systematic contacts in Ohio.

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants reside in this district, this district is where a substantial part of the events or omissions giving rise to the claims stated herein occurred, and Defendants are subject to personal jurisdiction in this venue.

## **GENERAL ALLEGATIONS**

### I.     **PLAINTIFFS ARE PROFESSIONAL MODELS AND THEIR IMAGES ARE COMMERCIALLY VALUABLE**

28.     Each Plaintiff is a professional model who earns a living by, *inter alia,* acting, modeling, and selling her image to companies and individuals for the advertisement of products and services.

29.     To make their living, each Plaintiff must, *inter alia,* promote her image and likeness to select clients, companies, commercial brands, media, social media, and entertainment outlets for the advertisement of products and services. She must also protect her own reputation in order to enhance her brand for modeling, acting, hosting, and other opportunities.

30.     Each Plaintiff's career in modeling, acting, and private enterprise has value stemming from the goodwill and reputation she has built, all of which are critical to establishing a brand, being selected for jobs, and maximizing earnings.

31.     Each Plaintiff commands substantial sums of money for the licensed commercial use of her image and likeness.

32.     A model's reputation directly impacts the commercial value associated with the use of one's image, likeness, or identity to promote a product or service.

33.     Each Plaintiff is a professional model in the ordinary course. Each Plaintiff seeks to control the commercial use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, advertising, brand spokesperson, or hosting engagements.

34.     In the modeling industry, reputation is critical; endorsing, promoting, advertising or marketing the "wrong" product, brand, business, or service, or working in a disreputable

industry, can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.

35.    Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

36.    As set forth below, each Plaintiff's image, likeness, and/or identity has been misappropriated and intentionally altered by or at the direction of Defendants, for use in their online marketing scheme designed to promote the Defendant Clubs.

37.    At no point has any Plaintiff authorized, consented to, or otherwise agreed to Defendants' use of their image, likeness, and/or identity.

## II.    F.M.J. RESTAURANT INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING

38.    Defendant F.M.J. Restaurant Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for Diamond Lodge through, among other things, active and dynamic use of Diamond Lodge's website and various coordinated social media promotions through Facebook, Twitter, and Instagram ("social media sites"), among others.

39.    F.M.J. Restaurant Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

40.    Indeed, F.M.J. Restaurant Inc.'s social media following is substantial.

41.    At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

42.     Upon information and belief,  F.M.J. Restaurant Inc. manages, operates and/or controls a website (accessible via the URL: http://www.dmclubs.com/diamond-lodge.html/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Lodge, particularly through the use of images of women in various stages of undress and links to Diamond Lodge's social media accounts.

43.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

44.     Upon information and belief,  F.M.J. Restaurant Inc. manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/thediamondlodge/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Lodge, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 4,978 people follow the Diamond Lodge's Facebook page.

45.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through its own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

46.     Upon information and belief, F.M.J. Restaurant Inc. manages, operates and/or controls an "Instagram account" (accessible via the URL: https://www.instagram.com/theediamondlodge/?hl=en) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Lodge, particularly

8

through the use of images of women in various stages of undress. As of October 5, 2018, 1,423 people follow the Diamond Lodge's Instagram page.

47.     F.M.J. Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

48.     Upon information and belief, F.M.J. Restaurant Inc. manages, operates and/or controls a "Twitter account" (accessible via the URL: https://twitter.com/diamondlodge?lang=en) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Lodge, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 2,867 people follow the Diamond Lodge's Twitter page.

49.     F.M.J. Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Twitter account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

50.     F.M.J. Restaurant Inc. has used each Plaintiff's image and likeness in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote the Diamond Lodge.

III.     **F.M.J. RESTAURANT INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES**

   A.  *Carmen Electra's Images*

51.     F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Facebook page on November 26, 2015.

52. F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Twitter page on November 26, 2015.

53. Attached as **Exhibit 1** are copies of F.M.J. Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### B. *Irina Voronina's Images*

54. F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Facebook page on September 21, 2016, September 28, 2016, October 19, 2016, December 22, 2016, December 24, 2016, and January 4, 2017.

55. F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Twitter page on December 24, 2016 and January 4, 2017.

56. Attached as **Exhibit 2** are copies of F.M.J. Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### C. *Lucy Pinder's Images*

57. F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Facebook page on February 3, 2016, March 9, 2016, May 11, 2016, May 18, 2016, May 25, 2016, and June 1, 2016.

58. F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Twitter page on September 24, 2014 and September 23, 2015.

59. Attached as **Exhibit 3** are copies of F.M.J. Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### D. Khloe Terae's Images

60.     F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Facebook page on November 20, 2015.

61.     F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Twitter page on November 20, 2015 and December 2, 2015.

62.     F.M.J. Restaurant Inc. posted Plaintiff's image and likeness on Diamond Lodge's Instagram page on January 14, 2016.

63.     Attached as **Exhibit 4** are copies of F.M.J. Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

## IV.     ROYAL RESTAURANT INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING

64.     Defendant Royal Restaurant Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for Diamond Royale through, among other things, active and dynamic use of Diamond Royale's website and various coordinated social media promotions through Facebook, Twitter, and Instagram ("social media sites"), among others.

65.     Royal Restaurant Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

66.     Indeed, Royal Restaurant Inc.'s social media following is substantial.

67.     At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

68.     Upon information and belief, Royal Restaurant Inc. manages, operates and/or controls a website (accessible via the URL: http://www.dmclubs.com/diamond-royale.html/)

11

through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Royale, particularly through the use of images of women in various stages of undress and links to Diamond Royale's social media accounts.

69.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

70.     Upon information and belief,  Royal Restaurant Inc. manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/thediamondroyale/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Royale, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 5,236 people follow the Diamond Royale's Facebook page.

71.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through its own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

72.     Upon information and belief, Royal Restaurant Inc. manages, operates and/or controls an "Instagram account" (accessible via the URL: https://www.instagram.com/theediamondroyale/?hl=en) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Royale, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 2,118 people follow the Diamond Royale's Instagram page.

12

73.     Royal Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

74.     Upon information and belief, Royal Restaurant Inc. manages, operates and/or controls a "Twitter account" (accessible via the URL: https://twitter.com/diamondroyale1?lang=en) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Royale, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 2,502 people follow the Diamond Royale Instagram page.

75.     Royal Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

76.     Upon information and belief, Royal Restaurant Inc. manages, operates and/or controls a "Yelp account" (accessible via the URL: https://www.yelp.com/biz/the-diamond-royale-canton) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Royale, particularly through the use of images of women in various stages of undress.

77.     Royal Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Yelp account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Yelp account.

13

78.     Royal Restaurant Inc. has used each Plaintiff's image and likeness in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote the Diamond Royale.

## V.     ROYAL RESTAURANT INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A.  Carmen Electra's Images

79.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Facebook page on November 26, 2015.

80.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Twitter page on November 26, 2015.

81.     Attached as **Exhibit 5** are copies of Royal Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### B.  Irina Voronina's Images

82.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Facebook page on September 21, 2016, September 28, 2016, October 19, 2016, December 22, 2016, December 24, 2016, and January 4, 2017.

83.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Twitter page on December 22, 2016, December 24, 2016, and January 4, 2017.

84.     Attached as **Exhibit 6** are copies of Royal Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### C. Lucy Pinder's Images

85.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Facebook page on September 2, 2015, September 23, 2015, September 30, 2015, February 3, 2016, March 9, 2016, May 11, 2016, May 18, 2016, May 25, 2016, and June 1, 2016.

86.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Twitter page on September 24, 2014, September 23, 2015, and May 11, 2016.

87.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Yelp page on July 27, 2017.

88.     Attached as **Exhibit 7** are copies of Royal Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### D. Khloe Terae's Images

89.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Facebook page on November 20, 2015 and September 22, 2016.

90.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Twitter page on November 20, 2015 and December 2, 2015.

91.     Royal Restaurant Inc. posted Plaintiff's image and likeness on Diamond Royale's Instagram page on November 15, 2015 and January 14, 2016.

92.     Attached as **Exhibit 8** are copies of Royal Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

## VI.    RENATO6, LTD'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING

93.     Defendant RENATO6, LTD coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for Diamond Club through, among other things,

active and dynamic use of Diamond Club's website and various coordinated social media promotions through Facebook, Twitter, and Instagram ("social media sites"), among others.

94.     RENATO6, LTD's advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

95.     Indeed, RENATO6, LTD's social media following is substantial.

96.     At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

97.     Upon information and belief,  RENATO6, LTD manages, operates and/or controls a website (accessible via the URL: http://www.dmclubs.com/cleveland.html) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Club, particularly through the use of images of women in various stages of undress and links to Diamond Club's social media accounts.

98.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

99.     Upon information and belief,  RENATO6, LTD manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/diamondclub.cleveland/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Club, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 5,340 people follow the Diamond Club's Facebook page.

100.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through its own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

101.    Upon information and belief, RENATO6, LTD manages, operates and/or controls an "Instagram account" (accessible via the URL: https://www.instagram.com/diamondclubcleveland/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Club, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 3,417 people follow the Diamond Club's Instagram page.

102.    RENATO6, LTD has at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

103.    Upon information and belief, RENATO6, LTD manages, operates and/or controls a "Twitter account" (accessible via the URL: https://twitter.com/diamondmensclub?lang=en) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Diamond Club, particularly through the use of images of women in various stages of undress. As of October 5, 2018, 2,518 people follow the Diamond Club's Twitter page.

104.    RENATO6, LTD has at all times relevant to this Complaint exercised actual control over the contents displayed on its Twitter account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

17

105.    RENATO6, LTD has used Ms. Pinder's image and likeness in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote the Diamond Club.

## VII.    RENATO6, LTD'S MISAPPROPRIATION OF PLAINTIFF'S IMAGES

### A.  *Lucy Pinder's Images*

106.    RENATO6, LTD posted Plaintiff's image and likeness on Diamond Club's Facebook page on February 24, 2016, July 26, 2017, August 2, 2017, September 6, 2017, October 25, 2017, November 15, 2017, January 3, 2018, September 12, 2018, and September 19, 2018.

107.    RENATO6, LTD posted Plaintiff's image and likeness on Diamond Club's Twitter page on January 2, 2013, April 30, 2014, May 14, 2014, October 14, 2015, July 26, 2017, August 2, 2017, March 7, 2018, and May 23, 2018.

108.    RENATO6, LTD posted Plaintiff's image and likeness on Diamond Club's Instagram page on September 6, 2017 and September 12, 2018.

109.    Attached as **Exhibit 9** are copies of RENATO6, LTD's uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

## VIII.   DEFENDANTS' USE OF PLAINTIFFS' IMAGES WAS UNAUTHORIZED, MISLEADING, CONFUSING, AND FRAUDULENT

110.    Defendants used Plaintiffs' images and likenesses to attract clientele, promote the Defendant Clubs, and generate revenue for Defendants.

111.    Defendants' use of Plaintiffs' images and likenesses, however, was unauthorized, misleading, confusing, and fraudulent.

112.    Defendants' use and alteration of Plaintiffs' images and likenesses on Defendants' social media accounts for their respective clubs falsely implies that Plaintiffs have worked for,

endorsed, sponsored, approved of, or were otherwise associated or affiliated with the Defendants, their clubs, and their activities.

113. Plaintiffs have never been employed by Defendants or contracted with Defendants to participate in events at the Defendant Clubs.

114. Plaintiffs have never endorsed, sponsored, approved of, otherwise associated, or affiliated themselves with Defendants, their clubs, and their activities.

115. Plaintiffs never gave permission, or assigned, licensed, or otherwise consented to Defendants' use or alteration of their images, likenesses, or identities to advertise, promote, market or endorse Defendants, their clubs, and their activities.

116. Defendants have never contacted Plaintiffs, either directly or indirectly, to request permission to use their images, likenesses, or identities to advertise, promote, market or endorse Defendants, their clubs, and their activities.

117. Defendants never hired or contracted with Plaintiffs to advertise, promote, market or endorse Defendants, their clubs, and their activities.

118. Defendants neither offered nor paid any remuneration to Plaintiffs for the unauthorized use of their images, likenesses, or identities.

119. Indeed, Plaintiffs only recently learned of Defendants' unauthorized use of their misappropriated images.

19

## FIRST CAUSE OF ACTION

### INVASION OF PRIVACY BY APPROPRIATION
**(Ms. Pinder vs. All Defendants)**
**(Ms. Electra, Ms. Terae, and Ms. Voronina vs. F.M.J. Restaurant Inc. and Royal Restaurant, Inc.)**

120.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

121.    Ohio recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the use of their image and likeness.

122.    Indeed, Ohio law provides that one who appropriates to his own benefit the image or likeness of another is subject to liability to the other for invasion of privacy.

123.    As demonstrated above, Defendants published, printed, displayed, and/or otherwise publically used Plaintiffs' images, likenesses, and identities on their social media outlets for the purposes of trade and/or commercial advertising, including, but not limited to, promoting, advertising, and marketing the Defendant Clubs, and their respective events and activities.

124.    Plaintiffs' faces and/or bodies are clearly visible and readily identifiable and distinguishable in the images Defendants used.

125.    Plaintiffs never consented to, authorized, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images in a clandestine fashion without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

126.    Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images, posted the images to Defendants' social media platforms

in an effort to market themselves and their activities and events without the authorization of Plaintiffs.

127.    In the alternative, at a minimum, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on their website and/or social media platforms for the purpose of marketing and advertising Defendants, their clubs, and their activities.

128.    Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

129.    Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

130.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

131.    As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs' by failing to compensate them for the value of each misappropriated use of their likeness.

132.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likeness, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

133.     As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

134.     As alleged in this Complaint, Defendants' actions demonstrate malice or aggravated or egregious fraud, and/or a flagrant disregard of Plaintiffs' rights, so as to warrant the imposition of punitive damages.

**SECOND CAUSE OF ACTION**

**NEGLIGENCE**
**(Ms. Pinder vs. All Defendants)**
**(Ms. Electra, Ms. Terae, and Ms. Voronina vs. F.M.J. Restaurant Inc. and Royal Restaurant, Inc.)**

135.     Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

136.     Defendants had a duty to refrain from appropriating the images of those with whom they had not contracted and had not paid.

137.     As previously described, Defendants violated said duty by posting Plaintiffs' images on Defendants' websites and social media accounts in order to advertise, promote, and market Defendants, their clubs, and their activities.

22

138. Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

139. As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs' by failing to compensate them for the value of each misappropriated use of their likeness.

140. As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

141. As alleged in this Complaint, Defendants' actions demonstrate malice or aggravated or egregious fraud, and/or a flagrant disregard of Plaintiffs' rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**UNJUST ENRICHMENT**
**(Ms. Pinder vs. All Defendants)**
**(Ms. Electra, Ms. Terae, and Ms. Voronina vs. F.M.J. Restaurant Inc. and Royal Restaurant, Inc.)**

142. Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

143. As previously alleged, Defendants used Plaintiffs' misappropriated images and likenesses to advertise and promote Defendants, their clubs, and their activities, thereby driving customers, business, and revenue to Defendants, their clubs, and their activities. Accordingly, Plaintiffs conferred a benefit on Defendants.

144. Defendants knew that they benefited from the use of Plaintiffs' images as is evident from the fact that Defendants repeatedly posted Plaintiffs' images to promote and advertise Defendants, their clubs, and their activities.

145. Nonetheless, although Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendants' commercial benefit, Defendants retained the benefits of using Plaintiffs' images and likenesses without compensating Plaintiffs.

146. Moreover, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

147. Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

148. As a direct and proximate result of Defendants' actions, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

24

149.    As a direct and proximate result of the benefit Plaintiffs conferred on Defendants, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains as remuneration.

150.    As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT, O.R.C. § 4165.02(A)(2) AND (3)
#### (Ms. Pinder vs. All Defendants)
#### (Ms. Electra, Ms. Terae, and Ms. Voronina vs. F.M.J. Restaurant Inc. and Royal Restaurant, Inc.)

151.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

152.    Defendants are "persons" within the meaning of O.R.C. § 4165.01(D).

153.    Plaintiffs are "persons" within the meaning of O.R.C. § 4165.01(D).

154.    In violation of O.R.C. § 4165.02(A), Defendants engaged in deceptive trade practices in the course of their business by misappropriating Plaintiffs' images and using such images without authorization on their websites and/or social media platforms in such a way that causes likelihood of confusion or misunderstanding as to Plaintiffs' sponsorship, approval, affiliation, connection, and/or association with Defendants, their clubs, and their activities.

155. Indeed, as described above, Defendants' use of Plaintiffs' images and likenesses represents to the public that Plaintiffs work for, sponsor, approve of, or are affiliated, connected, or otherwise associated with Defendants, their clubs, and their activities.

156. Defendants' advertisements, promotions, and publications using Plaintiffs' images and likenesses, however are false, misleading, confusing, and fraudulent. Plaintiffs do not work for and neither sponsor nor approve of Defendants, their clubs, or their activities, nor are Plaintiffs affiliated, connected, or otherwise associated with Defendants, their clubs, or their activities.

157. Plaintiffs never consented to, authorized, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images in a clandestine fashion without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

158. Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images, posted the images to Defendants' social media platforms in an effort to market Defendants, their clubs, and their activities.

159. In the alternative, at a minimum, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on their social media platforms for the purpose of marketing and advertising Defendants, their clubs, and their activities.

160. Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

161.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

162.     Upon information and belief, as a direct and proximate result of Defendants' deceptive trade practices, members of the public were deceived into believing that Plaintiffs worked for, sponsored, approved of, or were affiliated, connected, or otherwise associated with Defendants, their clubs, or their activities, resulting in increased patronage to Defendants' clubs, or their activities, increased business, and increased profits for Defendants.

163.     Defendants' deceptive trade practices have and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

164.     As a direct and proximate result of Defendants' deceptive trade practices, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

165.     As a direct and proximate result of Defendants' deceptive trade practices, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

166.     As alleged in this Complaint, Defendants' deceptive trade practices have and will continue to cause Plaintiffs irreparable harm. Accordingly, pursuant to O.R.C. § 4165.03(A), Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs'

27

misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

167.     Defendants' deceptive trade practices were purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their businesses, increase profits, and avoid paying money to legally acquire the right to commercially use Plaintiffs' images. Accordingly, pursuant to O.R.C. § 4165.03(B), Plaintiffs are entitled to reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

**VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)**
**(Ms. Pinder vs. All Defendants)**
**(Ms. Electra, Ms. Terae, and Ms. Voronina vs. F.M.J. Restaurant Inc. and Royal**
**Restaurant, Inc.)**

168.     Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

169.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), applies to Defendants.

170.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects Plaintiffs from the Defendants' conduct described herein.

171.     Defendants used Plaintiffs' images, likenesses, and/or identities as described herein without authority in order to, *inter alia*, create the perception that Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, their clubs, and their activities and/or that Plaintiffs consented to or authorized Defendants or their clubs' usage of Plaintiffs' images in order to advertise, promote, and market Defendants, their clubs, and their activities.

172.     Defendants' use and alteration of Plaintiffs' images, likenesses, and/or identities to advertise, promote, and market Defendants' businesses, their clubs, and their activities as described in this Complaint was false and misleading and a misrepresentation of fact.

28

173.    Defendants' unauthorized use and alteration of Plaintiffs' images, likenesses, and/or identities as described in this Complaint constitute false advertising by suggesting or implying, *inter alia*, that (1) Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, their clubs, and/or their activities, (2) Plaintiffs consented to or authorized Defendants or their clubs to use their images in order to advertise, promote, and market Defendants, their clubs, and/or their activities, and/or (3) Plaintiffs would participate in or appear at the specific events promoted in Defendants' advertisements and promotions.

174.    Defendants' false advertising described above has the capacity or tendency to confuse or deceive consumers, including actual and prospective patrons to the Defendant Clubs, as to the general quality of attendees and participants at the Defendant Clubs and in their events, as well as specifically whether Plaintiffs worked or would appear in person at, endorsed, sponsored, or approved of, or were otherwise affiliated or associated with Defendants, their clubs, and/or their activities.

175.    Upon information and belief, Defendants' false and deceptive advertising described above did, in fact, deceive and/or cause consumer confusion  as to whether Plaintiffs worked or would appear in person at, endorsed, sponsored, or approved of, or were otherwise affiliated or associated with Defendants, their clubs, and their activities.

176.    Among other things, upon information and belief, such unauthorized use and alteration of Plaintiffs' images and likenesses misled and served to entice consumers and prospective consumers to visit the Defendant Clubs and participate in and attend events at the Defendant Clubs and thereby had a material effect and impact on the decision of patrons and prospective patrons to visit Defendants' business establishments.

177.    Defendants' advertisements, promotions, and marketing of the Defendant Clubs and their events occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from several different states across the United States. Defendants principally use the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure traffic and patronage to their establishments.

178.    Defendants' unauthorized use of Plaintiffs' images, likenesses, and/or identities as described herein was designed to benefit Defendants' commercial and business interests by, among other things, promoting the Defendant Clubs and their activities and attracting clientele to the Defendant Clubs, thereby generating revenue for Defendants to the detriment of Plaintiffs.

179.    Defendants knew or should have known that their unauthorized use of Plaintiffs' images, likenesses, and/or identities would cause consumer confusion as described in this Complaint.

180.    Defendants' unauthorized use and alteration of Plaintiffs' images, likenesses, and/or identities, as described herein violates 15 U.S.C. §1125(a), and was wrongful.

181.    Defendants' wrongful conduct as described herein was willful.

182.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of their interests and rights, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

183.    The method and manner in which Defendants used and altered Plaintiffs' images further evinces that Defendants were aware of and/or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their images to advertise Defendants' businesses.

184. Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

185. As a direct and proximate result of Defendants' use and alteration of Plaintiffs' images and likenesses, Defendants have also damaged Plaintiffs by failing to compensate them for such use, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses in an amount to be established by proof at trial.

186. As a direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

187. As alleged in this Complaint, Defendants' actions have and will continue to cause Plaintiffs irreparable harm. Accordingly, pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

188. Defendants' conduct was purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their businesses, increase profits, and avoid paying money to legally acquire the right to commercially use Plaintiffs' images, and consequently,

exceptional relief is warranted pursuant to 15 U.S.C. § 1117(a), entitling Plaintiffs to treble damages and reasonable attorneys' fees.

## <u>INJUNCTION</u>

189.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

190.    Defendants have misappropriated Plaintiffs' images and likenesses for use in Defendants' marketing, advertisements, and promotions, thereby falsely suggesting or implying, *inter alia*, that (1) Plaintiffs worked at, endorsed, or were otherwise affiliated with  Defendants, their clubs, and/or their activities, (2) Plaintiffs consented to or authorized Defendants or their clubs to use their images in order to advertise, promote, and market Defendants, their clubs, and/or their activities, and/or (3) Plaintiffs would participate in or appear at the specific events promoted in Defendants' advertisements and promotions.

191.    As described above, Defendants' actions violate state and federal law and have caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

192.    Furthermore, in light of Defendants' repeated violation of Plaintiffs' rights on multiple occasions, injunctive relief is necessary to prohibit Defendants from harming Plaintiffs in the future.

193.    Plaintiffs therefore seek injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

32

194.     Such injunctive relief will not cause harm to any third parties. Rather, such injunctive relief will benefit third parties and the public, as such relief will aid in mitigating the misleading and confusing effects of Defendants' false advertising.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray for judgment against Defendants in amounts to be determined at trial, as follows:

1.     Compensatory damages for each Plaintiff against each Defendant in an amount in excess of the jurisdictional limits of this Court;

2.     Disgorgement of profits attributable to Defendants' misappropriation of Plaintiffs' images and likenesses;

3.     Treble damages;

4.     Punitive damages;

5.     Attorneys' fees and costs;

6.     Pre and post judgment interest;

7.     Injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization; and

8.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Janet G. Abaray*
Janet G. Abaray (2943)
David C. Harman (87882)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE P.C.**
312 Walnut St., Suite 2090
Cincinnati, OH 45202
Phone: (513) 852-5600
Fax: (513) 852-5611
Email: jabaray@burgsimpson.com
Email: dharman@burgsimpson.com

*Attorneys for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

*/s/ Janet G. Abaray*
Janet G. Abaray (2943)

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2018, a true and correct copy of the foregoing was

served with a Notice of Lawsuit and Request to Waive Service of Summons by certified mail,

postage prepaid, upon the following:

F.M.J. Restaurant Inc.
c/o Statutory Agent:
Richard E. Herthneck
20220 Center Ridge Road, Suite 304
Rocky River, Ohio 44116

Royal Restaurant, Inc.
c/o Statutory Agent:
Richard E. Herthneck
20220 Center Ridge Road, Suite 304
Rocky River, Ohio 44116

RENATO6, LTD.
c/o Statutory Agent:
Richard E. Herthneck
20220 Center Ridge Road, Suite 304
Rocky River, Ohio 44116


*/s/ Janet G. Abaray*
Janet G. Abaray (2943)

*Attorney for Plaintiffs*